## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO: 4:04CV-057-M**

| | |
|---|---|
| **MARY MARGARET SPRAGUE AND ARNOLD DAVID SPRAGUE** | **PLAINTIFFS** |
| **V.** | |
| **RICHARD GAMMON d/b/a/ PRESQUE ISLE CULTURES a/k/a PRESQUE ISLE CULTURES & LABORATORIES a/k/a PRESQUE ISLE TESTING LABORATORY** | **DEFENDANT** |

_____

| | |
|---|---|
| **RICHARD GAMMON** | **THIRD-PARTY PLAINTIFF** |
| **V.** | |
| **MARY GAIL WILDER, CATHY HUNT, LORI THRELKELD, AND VIRGINIA IMBLER MOORE** | **THIRD-PARTY DEFENDANTS** |

_____

| | |
|---|---|
| **VIRGINIA IMBLER MOORE** | **THIRD-PARTY PLAINTIFF** |
| **V.** | |
| **UNITED EDUCATORS INSURANCE, A RECIPROCAL RISK RETENTION GROUP, INC.** | **THIRD-PARTY DEFENDANT** |

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Virginia Imbler Moore [DN 77] for partial summary judgment. Third-party Defendants, United Educators Insurance, have also

filed a motion for summary judgment [DN 111]. Fully briefed, these matters are ripe for decision. For the following reasons, Moore's Motion for Partial Summary Judgment is **DENIED**, and United Educators Insurance's Motion for Summary Judgment is **GRANTED**.

## I. BACKGROUND

This case arises out of injuries sustained by Plaintiff, Mary Margaret Sprague ("Sprague"), during an accidental spill of bacteria cultures in a Microbiology laboratory class at Henderson Community College ("HCC"). Sprague filed suit against Defendant, Richard Gammon ("d/b/a Presque Isle Cultures[1]"), the party who provided the bacteria cultures to HCC.

Gammon, in turn, filed a Third-Party Complaint seeking indemnification and, in the alternative, an apportionment instruction against several employees of HCC in their individual capacities. These employees include Cathy Hunt ("Hunt"), head of the Microbiology Department, who allegedly ordered the bacteria; Mary Gail Wilder ("Wilder"), Chair of the Nursing Program, who was also allegedly involved in ordering the bacteria; and Lori Threlkeld ("Threlkeld") instructor in Medical Microbiology, who was teaching the Microbiology course at the time Mrs. Sprague was injured. The Third-Party Complaint also names as a Third-Party Defendant Virginia Imbler Moore ("Moore"), a student in Threlkeld's Medical Microbiology class, who accidentally spilled the bacteria on Sprague. The Third-Party Complaint alleges that the negligence of one and/or all of these women (collectively

---

[1]Presque Isle Cultures is also known by two alternative names, Presque Isle Cultures & Laboratories and Presque Isle Testing Laboratory.

the Third-Party Defendants), and not the negligence of Gammon, caused or contributed to the Plaintiff's injuries.

Moore, in turn, filed a Third-Party Complaint against her insurance company, United Educators Insurance ("United Educators"). Moore's Complaint is based on a "Limited Professional Liability Insurance Policy" (the "Policy") that United Educators issued to the Kentucky Community & Technical College System ("KCTCS"), of which HCC is a part. The Policy offers coverage to students if certain requirements are met. Believing she met the Policy's requirements, Moore sought coverage from KCTCS. On January 31, 2005, KCTCS sent Moore a letter stating that coverage was not available to her under the Policy because "[t]he insurance you paid for through KCTCS while a student was protection for you while participating in clinicals (hands on experience) at a local hospital or clinic, not in a lab setting." United Educators then considered the claim and reached a similar conclusion, stating, "[c]overage is not available for this claim because the alleged negligent act–Ms. Moore's spilling of the bacteria during a laboratory class–does not meet the definition of Wrongful Act under the Policy."

In her Complaint, Moore seeks compensatory damages for United Educators' alleged violation of the policy, punitive damages for United Educators' alleged bad faith, and declaratory relief. Moore filed this motion seeking partial summary judgment on the issue of whether United Educators should be liable to pay any award for which Moore is adjudged to be responsible. United Educators filed a separate motion for summary judgment, arguing that they are not liable.

## II. STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories, and affidavits, establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## III. DISCUSSION

The issue in this case concerns a clause in United Educators' Policy which defines the term "wrongful act," in part, through the use of the term "practicum." Per the terms of the

Policy, United Educators agrees to "pay on behalf of the Insureds all Damages that exceed the applicable Self-Insured Retention amount and then up to the Limit of Liability of the Policy as a result of a Wrongful Act."

The Policy, in turn, defines the term "Wrongful Act" as follows:

> (b) any negligent act, error, or omission by a student while performing services for which he/she is being trained in any practicum, field work experience, clinical training or internship in fulfillment of requirements of a Professional Program; which performance or failure to perform, or negligent act, error or omission, results in injury neither expected nor intended.[2]

United Educators contends that coverage under the Policy is not triggered because the incident of spilling bacteria on a fellow student in a college lab was not a wrongful act, as it did not occur while performing services for which Moore was being trained, and because the incident did not occur during a practicum. Moore argues that the incident was both a wrongful act and occurred during the course of a practicum.

The interpretation of a contract is a question of law for the court. Equitable Life Assurance Society of the United States v. Wells, 101 F.2d 608, 610 (6th Cir. 1939). "An insurance contract must be construed according to its true character and purpose, and in accordance with the intentions and expectation interests of the parties. National Ins. v. Lexington Flying Club, 603 S.W.2d 490, 493 (Ky. Ct. App. 1980). "[T]erms of insurance contracts have no technical meaning in law and are to be interpreted according to the usage

---

[2] Moore notes that though the Policy contains a New York choice of law provision, the Court should nevertheless apply Kentucky law as the choice of law provision should not be enforced and Kentucky has the "most significant relationship" with the parties. United Educators does not dispute that Kentucky law is applicable and cites Kentucky law in its brief. The Court agrees and will apply Kentucky law.

of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured." James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co., 814 S.W.2d 273, 279 (Ky. 1991). "A policy of insurance is to be construed liberally in favor of the insured and if, from the language, there is doubt or uncertainty as to its meaning, and it is susceptible to two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted." St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc., 870 S.W.2d 223, 227 (Ky. 1994). Nevertheless, courts have also noted that:

> "[t]he rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the parties' object and intent or narrowly expressed in the plain meaning and/or language of the contract. Neither should a nonexistent ambiguity be utilized to resolve a policy against the company. We consider that courts should not rewrite an insurance contract to enlarge the risk to the insurer.

Id. at 226-227.

With these rules in mind, the Court turns to the meaning of the word practicum. First, Kentucky courts often refer to dictionary definitions in order to determine the ordinary meaning of undefined contract terms. See Commonwealth of Kentucky v. Whitworth, 74 S.W.3d 695, 700 (Ky. 2002); United States Fire Ins. Co. v. Kentucky Truck Sales, Inc., 786 F.2d 736, 739 (6th Cir. 1986); Ayers v. C & D General Contractors, 237 F. Supp.2d 764, 770 (W.D. Ky. 2002). The *Merriam-Webster* on-line dictionary defines practicum as "a course of study designed especially for the preparation of teachers and clinicians that involves the supervised practical application of previously studied theory." The on-line *Encarta World*

*English Dictionary*, defines practicum as "work experience as part of study: a period of work for practical experience as part of an academic course." The *American Heritage Dictionary of the English Language* defines practicum as "a school or college course, especially one in a specialized field of study, that is designed to give students supervised practical application of previously studied theory." The dictionary at *Infoplease.com* defines practicum as "the part of a course consisting of practical work in a particular field."

In this case, the dictionary definition of the word practicum supports United Educators' argument. Although the dictionaries surveyed vary slightly in their definition of the term practicum, no dictionary definition supports Moore's argument. Some definitions speak of a practicum as work experience in a particular field. Work in a classroom, laboratory setting does not fit within that definition. The term can also refer to practical work experience. Experiments in a laboratory setting are mere extensions of work in the classroom setting. Such experiments offer no practical application of previously studied theory in any real sense. Laboratory work occurs in a controlled environment.

In addition to the dictionary, courts can also look to other similar terms in the policy to ascertain the meaning of a word. Under the doctrine of noscitur a sociis, the meaning of a word in a contract is known from the accompanying words. Robinson v. Ehrler, 691 S.W.2d 200, 207 (Ky. 1985). Moreover, common law decisions are appropriate sources of law in ascertaining the meaning of contract terms. See e.g., Ayers, 237 F.Supp.2d at 770. Cases which discuss the world practicum all reference the term in conjunction with a clinical work setting that is outside of and distinct from a classroom setting. See e.g., Ivan v. Kent

State Univ., No. 94-4090 1996 U.S. App. LEXIS 22269 (6 th Cir. Jul. 26, 1996); Siskaninetz v. Wright State Univ., 175 F. Supp. 2d 1018, 1022 (S.D. Ohio 2001); Petrone v. Cleveland State Univ., 993 F. Supp. 1119, 1122 (N.D. Ohio 1998); Marshall v. Baptist Hospital, Inc., 473 F. Supp. 465, 467 (M.D. Tenn. 1979).

These sources likewise lend no support to Moore's position. Applying the doctrine of noscitur a sociis, the Court is to compare the term practicum with the terms 1) field work experience, 2) clinical training, or 3) internship in fulfillment of requirements of a Professional Program. Experiments in a classroom laboratory setting would not fit within any of these terms. Additionally, courts which have used the term practicum have done so consistently with the Court's reading of the dictionary meaning of the word. In sum, the Court concludes that Moore's work in a classroom, laboratory setting was not part of a practicum.

Although the Court's conclusion above is sufficient to grant United Educators' motion, the Court also notes that Moore is not entitled to coverage under the Policy because she was not "Performing Services" for which she was being trained. The Policy defines "wrongful act" as "any negligent act, error or omission by a student *while performing services for which he/she is being trained* in any practicum...." United Educators analogizes Moore's laboratory work to a law student's moot court work in a school classroom. The Court agrees with this analogy. While laboratory work and moot course are both valuable activities for students, neither activity provides services to others. Moreover, the phrase "while performing services for which he/she is being trained ," supports the Court's reading

of the word practicum in that a practicum could not be performed in a classroom, laboratory setting.[3]

Finally, Moore's bad faith claim also fails. In Kentucky, a bad faith claim requires, among other things, proof that the insurer is obligated to pay the claim under the policy. Wittmer v. Jones, 864 S.W.2d 885, 890 (Ky. 1993)  That is not the case here.

## IV. CONCLUSION

For the foregoing reasons, Moore's Motion for Partial Summary Judgment [DN 77] is **DENIED**, and United Educators Insurance's Motion for Summary Judgment [DN 111] is **GRANTED**

Copies to: Counsel of record
04cv-057Sprague(5)

---

[3]The parties also discuss whether another provision of the policy, concerning the dispersal and release of bacteria, is sufficient to exclude coverage.  The Court need not consider this issue, as the Court has already provided two reasons as to why the Policy does not provide coverage on these facts.